**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0395-15T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CRUZ MARTINEZ, JR.,

    Defendant-Appellant.

_____

Argued April 25, 2017 — Decided May 15, 2017

Before Judges Yannotti, Fasciale and
Sapp-Peterson.

On appeal from Superior Court of New Jersey,
Law Division, Hudson County, Indictment No.
13-08-1528.

Marcia Blum, Assistant Deputy Public Defender,
argued the cause for appellant (Joseph E.
Krakora, Public Defender, attorney; Ms. Blum,
of counsel and on the brief).

Erin M. Campbell, Assistant Prosecutor, argued
the cause for respondent (Esther Suarez,
Hudson County Prosecutor, attorney; Ms.
Campbell, on the brief).

PER CURIAM

    Defendant Cruz Martinez, Jr. was tried before a jury and found guilty of murder and other offenses. The court sentenced

defendant to life imprisonment, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. He appeals from the judgment of conviction dated July 27, 2015. We affirm defendant's convictions and the sentences imposed, but remand the matter to the trial court for entry of a corrected judgment of conviction.

I.

Defendant was charged with the first-degree murder of Alisha Colon, N.J.S.A. 2C:11-3(a)(1), 2C:11-3(a)(2) (count one); first-degree felony-murder of Alisha Colon, N.J.S.A. 2C:11-3(a)(3) (count two); second-degree burglary, N.J.S.A. 2C:18-2 (count three); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count four); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count five); and second-degree certain persons not to possess a weapon, N.J.S.A. 2C:39-7(b) (count six).

At the trial, evidence was presented which established that on January 17, 2013, there was a dispute at W.F.'s apartment on Belgrove Drive in Kearny, where W.F. had been living with her three children and other family members.[1] The dispute became physical, and W.F.'s niece accidentally struck W.F. W.F.'s niece called her father, E.M., who arrived outside the apartment. E.M.

---

[1] We use initials for many of the persons involved in order to protect their privacy.

took out a machete and warned those present to stay away from him and his daughter. The police were called and they arrested E.M. Thereafter, W.F. went to the police station and filed a complaint against E.M.

W.F. left the police station, and picked up her seven-year-old son, I.F. She dropped I.F. off at the apartment, leaving him with her daughter Alisha Colon, who was sixteen years old. I.F. and Alisha were the only individuals present in the apartment. Alisha ordered food. While Alisha and I.F. were waiting for the food delivery, they watched television.

After the altercation at W.F.'s apartment, Lamar Farrar met defendant at Farrar's apartment in East Orange. Farrar was there with his friend, Eric Shelton. Defendant told Farrar that E.M. had been arrested earlier that day. Farrar and Shelton agreed to be defendant's "back up." Defendant left the apartment, but said he would be back later. He told Farrar and Shelton to change into black clothing.

About an hour or two later, defendant returned to Farrar's apartment with another individual. They smoked cigarettes and drank beer for a while. The four men later left Farrar's apartment and drove to Kyeeth Smith's residence, where they remained for several hours. They then drove to W.F.'s apartment building.

Defendant, Farrar, and Shelton entered the building. They proceeded to the second floor while Smith remained in the car. Defendant pushed the door to W.F.'s apartment open with his shoulder, and he drew a firearm. Defendant entered the bedroom and shot Alisha in the head, above the eyebrow. Medical testimony established that the shot was fired six to twelve inches from her head. She did not die instantly, but the gunshot caused her death.

After the shooting, defendant, Farrar, Shelton, and Smith returned to Farrar's apartment. Defendant told Farrar to bring a gun into the apartment and Farrar complied. Around this time, J.F. arrived at the apartment with another person. Defendant told J.F. that the young girl who had been living in W.F.'s apartment was dead. According to J.F., defendant said he also had seen a young boy at the apartment, but he did not feel like killing two people. J.F. later told detectives that defendant said he wanted to send a message not to mess with his family.

The police responded to the scene of the shooting. They noticed the door to W.F.'s apartment was slightly ajar, and the door's top hinge and molding were broken. The police entered the bedroom where they found Alisha's body. Homicide detectives from the Hudson County Prosecutor's Office (HCPO) arrived at the apartment. They recovered a spent shell casing from a pillow near Alisha's head. Later, after being informed there was an exit wound

4

on the body, a detective returned to the apartment and recovered a projectile in the room where Alisha was shot.

On January 19, 2013, I.F. was shown a photo array, and he identified defendant as the man who shot Alisha. I.F. was shown other photo arrays with photos of Farrar and Smith, but he could not identify or recognize the persons in any of the photos.

Farrar and J.F. testified at trial. Farrar stated that when he entered W.F.'s apartment with defendant and Shelton, he heard someone say, "no — stop — don't — please." He then heard a gunshot. When Farrar turned and looked into the room, he saw the victim lying there.

Defendant did not testify at trial. He presented one witness who was in the vicinity of W.F.'s apartment at approximately 5:00 p.m. on the day of the shooting. The witness said she saw either three or four men running from the building to a dark car.

The jury found defendant guilty on all charges. The judge later sentenced defendant and filed a judgment of conviction dated July 27, 2015. This appeal followed.

On appeal, defendant raises the following arguments:

POINT I

THE TRIAL COURT COERCED A JUROR INTO REACHING A VERDICT.

<u>POINT II</u>

THE LIFE TERM IS EXCESSIVE AND IS BASED ON AN INAPPLICABLE AGGRAVATING FACTOR.

II.

Defendant first argues that he was denied the right to a fair trial because the trial judge improperly coerced a juror to reach a verdict.

"[T]he right to a jury trial in criminal matters is one of the founding principles of [the] Republic and is guaranteed by both the Sixth Amendment of the Constitution to the United States, and Article I, Paragraph [Ten] of the New Jersey Constitution." <u>State v. Dorsainvil</u>, 435 <u>N.J. Super.</u> 449, 480 (App. Div. 2014) (citing <u>United States v. Gagnon</u>, 470 <u>U.S.</u> 522, 526, 105 <u>S. Ct.</u> 1482, 1484, 84 <u>L. Ed.</u> 2d 486, 490 (1985); <u>State v. A.R.</u>, 213 <u>N.J.</u> 542, 557 (2013)). "The role of the jury as the judges of facts is predicated on the integrity of the deliberative process." <u>Id.</u> at 481 (citing <u>State v. Corsarao</u>, 107 <u>N.J.</u> 339, 346 (1987)).

In assessing whether a trial court has acted appropriately when informed that the jury cannot reach a unanimous verdict, we consider whether the court's supplemental instruction improperly had the capacity to influence any dissenting juror to change his or her vote. <u>Ibid.</u> (citing <u>State v. Figueroa</u>, 190 <u>N.J.</u> 219, 237-38 (2007)). We also must consider "the weighty role that the judge

A-0395-15T1

plays in the dynamics of the courtroom" and whether the court "improperly coerced the jury into returning a verdict." Ibid. (quoting Figueroa, supra, 190 N.J. at 237-38).

When the jury has not yet reached its verdict, "a trial judge must be especially vigilant to avoid communicating a results-oriented message that could be perceived as intolerant of dissent and antagonistic to the free expression of strongly held beliefs that may not be shared by a majority of the deliberating jurors." Ibid. The trial court must recognize that jurors "accord great weight and deference to even the most subtle behaviors of the trial judge." Figueroa, supra, 190 N.J. at 238.

Furthermore, the trial judge may not "undo a jury deadlock by focus[ing] upon possibly the weakest links in the chain locking the jury in disagreement, namely, the minority holdouts on the jury." State v. Gleaton, 446 N.J. Super. 478, 515 (App. Div. 2016) (alteration in original) (quoting State v. Nelson, 304 N.J. Super. 561, 565-66 (App. Div. 1997)).

Our Supreme Court has approved the following supplemental instructions to be given to the jury in cases where the jury has not been able to reach a decision:

> It is your duty, as jurors, to consult with
> one  another and to deliberate with a view to
> reaching  an  agreement,  if  you  can  do  so
> without violence to individual judgment. Each
> of you must decide  the  case  for  yourself,

but [you should] do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges — judges of the facts.

[State v. Czachor, 82 N.J. 392, 405 n.4 (1980) (citations omitted).]

Here, the trial record shows that late in the afternoon on the second day of the jury's deliberations, the judge received a note from the jury stating, "We have a juror who refuses to deliberate. What should we do?" The judge had the jurors return to the courtroom, and, consistent with Czachor, the judge provided the following instruction:

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.

Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.

In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced that it is erroneous but do not surrender your honest conviction as to weight or effect of the evidence solely because of the opinion of your

fellow jurors, or for the mere purpose of returning a verdict. You are not partisans. You are judge, judge of the facts.

Thereafter, the judge decided to identify the juror who had prompted the note, and the extent and nature of the problem. The judge interviewed the jurors individually, and determined that Juror No. 2 was the juror in question. The juror told the judge he had not refused to deliberate. He explained that there was a lot of evidence to process, and he thought the other jurors were "rushing." He said that since it was late in the afternoon, he thought the jurors should take a break, go home for the weekend, "think about [it]," and resume deliberations the following Monday.

The judge twice asked the juror whether he was merely saying that he had enough that day or that he was absolutely refusing to deliberate. The juror replied that he wanted to "break" and "catch up from this point" later. The judge told the juror to return to the jury room, and after questioning the other jurors, determined that no other juror had refused to deliberate.

At approximately 5:00 p.m., the judge conferred with counsel and decided to have the jury continue deliberations the following Monday. The judge again questioned Juror No. 2 individually. The following colloquy ensued:

> THE COURT: Hi sir. Okay. So after conferring with each of the jurors, I have three questions for you.

JUROR [NO.] 2: Yes.

THE COURT: One, you understand, sir, that your deliberation has to be based on your decision as an individual juror, but in conjunction with your fellow jurors deliberating and attempting to reach a verdict. Do you understand that?

JUROR [NO.] 2: Yes. Yes, I do.

THE COURT: Okay. You understand, sir, that you have to be willing to participate and . . . deliberate with your fellow jurors? You can't just refuse. You can, but if you refuse to deliberate, then you have to be removed from the jury. So what I'm asking you is are you refusing to deliberate with your fellow jurors?

JUROR [NO.] 2: No. All I am saying is there are all [these] facts that — you know, everybody's splitting here and there. They are giving these facts . . . . Already like I was telling, Your Honor. It [is] like everyone has already made up their mind. We have to digest the facts as we go, look at the evidence, because that's this (inaudible) all that.

THE COURT: Sure.

JUROR [NO.] 2: So as we go through, I'm like now this is too much. This take a break a little bit, digest what we just read, and what everybody else say, so that . . . .

THE COURT: Okay.

JUROR [NO.] 2: [W]e can move forward.

THE COURT: Okay.

JUROR [NO.] 2: Yeah.

10

THE COURT: Here's the thing. You've been given all of the facts and the evidence.

JUROR [NO.] 2: Yes.

THE COURT: Nothing's changing about that.

JUROR [NO.] 2: Okay.

THE COURT: So while you can discuss what it is, and how you view it, and what you think that means in terms of applying the facts of the evidence and the law, nothing about the facts are going to change.

So my question for you is I need to make sure that this is not a situation where you're simply afraid to reach a decision?

JUROR [NO.] 2: No.

THE COURT: Okay.

JUROR [NO.] 2: It's not.

THE COURT: I need to make sure that it's not a situation where you feel like you need to go home and research to assist your decision.

JUROR [NO.] 2: No, I'm not researching.

THE COURT: Okay.

JUROR [NO.] 2: I am just internalizing all these pieces that everybody has been saying, what we have read in there, booklet that you give us . . .

THE COURT: Uh-huh.

JUROR [NO.] 2: [S]o that I can see how all of these facts fit in.

THE COURT: Okay.

A-0395-15T1

JUROR [NO.] 2: When I make — decide — I pick a solution to two or one of them (inaudible) over there.

THE COURT: Right. Uh-huh.

JUROR [NO.] 2: I know exactly that in my conscience, this what it tells me.

THE COURT: Okay.

JUROR [NO.] 2: But when everybody else in the room says we have decided — we have decided. No, I'm not ready to make that decision.

THE COURT: Okay. Well, what I'm asking you, sir, though is that . . . if you're telling me that you're done deliberating today you can't process any more information. Then I will give you the time and I will let you all begin deliberations on another day.

JUROR [NO.] 2: Exactly.

THE COURT: But if you're telling me that you . . . just need to keep processing and you're not ready to make a decision, you're not ready to make a decision, we can't have you just keep saying you need to come back a different day, you need to come back a different time.

JUROR [NO.] 2: No, . . . we were okay all the way until that time and everybody was discussing. We kept on reading that . . . (inaudible).

THE COURT: Right. But here's the thing. If . . . your fellow jurors have decided that you all have discussed it . . . .

JUROR [NO.] 2: Uh-huh.

THE COURT: [A]nd there's nothing left to discuss, and now they're taking a vote, you have to actively participate in that voting.

JUROR [NO.] 2: Okay. Uh-huh.

THE COURT: It doesn't mean you have to agree with them.

JUROR [NO.] 2: Uh-huh. Uh-huh.

THE COURT: You . . . don't have to surrender your own individual decision. But you have to vote.

JUROR [NO.] 2: Yes.

THE COURT: You can't just say I'm not voting, because then you're not deliberating.

JUROR [NO.] 2: Okay.

THE COURT: Do you understand what I'm saying.

JUROR [NO.] 2: Yes.

THE COURT: So with that being said, if I were to send you back into the jury room with your fellow jurors, are you in a position, if they say let's take a vote on this charge or these charges, are you prepared to participate in that deliberation process?

JUROR [NO.] 2: Yes.

THE COURT: I'm not forcing you to make a decision . . . .

JUROR [NO.] 2: Your Honor . . . .

THE COURT: [O]ne way or the other.

[. . . .]

THE COURT: But you have to actively participate in deliberations.

JUROR [NO.] 2: Okay.

THE COURT: [I]f the question was whether the tie is . . . gold and he has to vote and I have to vote, and we say well, it looks more yellow or it looks more gold, or, you know, I think it's gold, because the expert said it's gold, or I think it's yellow, because the other expert said it's yellow. And then they say okay. Has everybody talked about everything about this tie? Yes. All right. It's time to vote.

Do you find yellow or gold? Do I find yellow or gold? I can't just say I'm not doing anything. You have to deliberate.

JUROR [NO.] 2: Okay.

THE COURT: So if . . . you can't make a decision, you can say I can't make a decision . . . .

JUROR [NO.] 2: Uh-huh.

THE COURT: [B]ut you have to actively participate in a deliberation.

JUROR [NO.] 2: Okay. Okay.

THE COURT: So are you telling me that you need time because you're spent and you have nothing left to do today, or are you saying to me that . . . you misunderstood and now if I send you back in there, you are able to participate with your fellow jurors and deliberate?

JUROR [NO.] 2: I will participate. I will participate. No problem.

The juror returned to the jury room, and the judge briefly discussed the matter with the attorneys, with the expectation that the jury could continue deliberations until 6:00 p.m., if they wanted to, and return on Monday for further deliberations. The

14

jurors returned to the courtroom, and the judge provided the following instruction:

> [W]e want you to know . . . that we're neither rushing you, nor prohibiting you, or attempting to preclude you from being able to do what you need to do in the jury deliberation room, whatever that may be.
>
> That being said, I've taken the opportunity with the attorney[s] to confer with each of you and I believe that each of you now remembers and understands your responsibilities as jurors to deliberate with one another. That deliberation requires that you each participate in the full deliberation with your fellow jurors in the jury room.
>
> That having been said, now that everyone is aware of their responsibilities as a juror, with regard to the deliberating jurors, we'd like to know, now that we have expressed and explained to each of you what your responsibilities are as a deliberating juror with one another, whether you would, at this point, like some additional time today to continue with your deliberations.
>
> We will allow you until 6:00 [p.m] if you'd like to continue to deliberate, knowing that now everyone is aware that they must fully participate in the deliberation. So just for the deliberating jurors, by show of hands, how many of you would like to continue deliberating today?
>
> So it looks like [that is] everyone? I think that's everyone, right? Yes. Okay.
>
> So we're going to send you back into the jury room.

A-0395-15T1

The jurors returned to the jury room, and shortly thereafter informed the judge that they had reached a verdict. Before receiving the verdict, the judge decided to question Juror No. 2 again, in order "to make sure that he understood that there was no issue with regards to him going back in to [deliberate], that he didn't feel rushed to make a decision, and that his verdict is a true verdict based on his understanding that he . . . should deliberate with his fellow jurors" and make a decision.

The judge then questioned Juror No. 2 individually, and the following exchange took place.

> THE COURT: We wanted to bring you back out here to make sure that you understood that I was affording you the opportunity after explaining to you that you have to continue to deliberate with your fellow jurors, irrespective of what your decision would be. Whether you agreed with them, disagreed with them, or was not able to make a decision.
>
> First, do you understand that that was what I told you to do?
>
> JUROR [NO.] 2: Yes.
>
> THE COURT: Okay. Having understood that, I want to make sure . . . that my instructions to you separately and apart or anything else that occurred after that did not pressure you to make a decision with regards to your deliberation or verdict in this case?
>
> JUROR [NO.] 2: No.
>
> THE COURT: Okay. Did you truly exercise your own conscience, decide with your fellow jurors

what your decision was going to be, and make that decision based on what you believe the evidence, and the facts, and the law says?

JUROR [NO.] 2: Yes.

THE COURT: Did anyone force you, threaten you, rush you, or coerce you into making a decision?

JUROR [NO.] 2: No.

THE COURT: Is the jury (sic) based on your understanding of the law and the facts as I explained it to you or is it simply for the purposes of reaching a verdict?

JUROR [NO.] 2: With the law.

THE COURT: Okay. You're sure?

JUROR [NO.] 2: Yes.

THE COURT: Okay. Do you . . . need me to speak to you outside the presence of the attorneys or is this a true statement?

JUROR [NO.] 2: No, it's okay. No, I'm fine.

Based on this record, we reject defendant's contention that the judge improperly coerced Juror No. 2 to reach a verdict. As the transcript makes clear, the judge questioned the juror to determine if he was refusing to deliberate. The juror initially stated that he needed more time to consider the evidence.

The judge properly pointed out that the juror had a duty to review the evidence with the other jurors, and he could not refuse to do so. The judge emphasized that the juror did not have to

agree with the other jurors. The judge told the juror that she was not forcing him to make a decision, but he was required to deliberate with the other jurors. The juror agreed to deliberate.

Furthermore, as the record shows, the judge agreed to allow the jurors to continue deliberations until 6:00 p.m. and they could resume their deliberations the following Monday. The judge questioned the jurors and they all agreed to continue deliberations.

In addition, after the jury informed the judge that it had reached a verdict, the judge again questioned Juror No. 2. As noted, he stated that he did not feel pressured by the judge's questions and instructions. The juror confirmed that he did not feel he had been coerced or forced to make a decision.

We conclude that, based on the record, the judge did not abuse her discretion by the manner in which she questioned Juror No. 2, and the instructions to that juror and the jury as a whole were proper. The juror was not coerced to reach a decision, and defendant was not denied his right to a fair trial.

### III.

Defendant also argues that his sentence is excessive. Here, the judge found aggravating factors one, N.J.S.A. 2C:44-1(a)(1) (nature and circumstances of the offense); three, N.J.S.A. 2C:44-1(a)(3) (risk that defendant will commit another offense); six,

N.J.S.A. 2C:44-1(a)(6) (extent of defendant's prior criminal record); and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the law). The judge found no mitigating factors.

On count one (murder), the judge sentenced defendant to life imprisonment, subject to NERA. The judge explained that this "translates" to seventy-five years, and he must serve eighty-five percent of that sentence before becoming eligible for parole. The court merged count five (unlawful possession of a firearm) with count three (burglary), and sentenced defendant on count three to a concurrent term of ten years of incarceration, subject to NERA.

In addition, the judge sentenced defendant to a ten-year term on count four (unlawful possession of a weapon), with a five-year period of parole ineligibility; and a concurrent ten years on count six (certain persons not to have weapons), with five years of parole ineligibility. The judge also imposed appropriate fines and penalties.

On appeal, defendant argues that the judge erred by finding aggravating factor one. He contends that that finding was not supported by the evidence. He also argues that his prior criminal record does not support the findings on aggravating factors three, six, and nine.

The scope of our review of the trial court's "sentencing decisions is relatively narrow and is governed by an abuse of discretion standard." State v. Blackmon, 202 N.J. 283, 297 (2010). We may not set aside a sentence unless the trial court did not follow the sentencing guidelines; the court's findings of aggravating and mitigating factors were not based upon sufficient credible evidence in the record; or the court's application of the sentencing guidelines to the facts of the case "shock[s] the judicial conscience." State v. Bolvito, 217 N.J. 221, 228 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

We are convinced that the court's findings of the aggravating factors is supported by sufficient credible evidence in the record. The finding of aggravating factor one was amply justified by the evidence, which indicated that defendant forced his way into the victim's home, searched the apartment for Alisha and her brother, and shot Alisha while she was pleading for her life. See State v. O'Donnell, 117 N.J. 210, 217-18 (1989) (holding that aggravating factor one may be found when the offense is committed in a manner to maximize the victim's pain). Moreover, the finding of aggravating factor one was justified by the anguished reaction of her young brother, who witnessed the shooting. See State v. Lawless, 214 N.J. 594, 615 (2013) (noting that the finding of

aggravating factor one can be based on the harm to persons other than the immediate victim of the offense).

We also reject defendant's contention that his criminal record does not support the findings of aggravating factors three, six, and nine. Defendant has a juvenile record, and his adult record includes convictions for receiving stolen property, aggravated assault, aggravated arson, and armed robbery. He has twice been sentenced to incarceration in State prison. He also has been arrested at least six times for violent and assaultive crimes.

Defendant contends that his record does not justify the court's findings because his convictions for assault and receiving stolen property are twenty-five years old, and his convictions for arson and robbery are seventeen years old. He also argues that the instant offense is the only offense in which he was charged with firing a gun. These arguments are without sufficient merit to warrant comment. R. 2:11-3(e)(2).

We conclude that the trial judge followed the sentencing guidelines, the judge's findings are supported by sufficient credible evidence, and the sentences imposed are a reasonable exercise of the court's sentencing discretion.

We note, however, that the judge sentenced defendant to a term of life imprisonment. If defendant is convicted of a NERA offense, he must serve eighty-five percent of the sentence before

becoming eligible for parole. <u>N.J.S.A.</u> 2C:43-7.2(a). Murder is a NERA offense. <u>N.J.S.A.</u> 2C:43-7.2(d)(1). NERA provides that "[s]olely for the purpose of calculating the minimum term of parole ineligibility pursuant to subsection a. of this section, a sentence of life imprisonment shall be deemed to be [seventy-five] years." <u>N.J.S.A.</u> 2C:43-7.2(b).

Here, the judge noted that, under NERA, a sentence of life imprisonment "translates" to a seventy-five year sentence. The judge made this statement when explaining to defendant the time he would have to serve in prison before becoming eligible for parole. However, the judgment of conviction erroneously states that defendant was sentenced on count one to seventy-five years of incarceration. The judgment of conviction should be amended to reflect the sentence imposed on count one, which was a sentence of life in prison.

Affirmed and remanded to the trial court to enter an amended judgment of conviction in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0395-15T1